NEW JERSEY DEPARTMENT OF LABOR,
WORKMEN'S COMPENSATION BUREAU.

MARY A. LESSIG, PETITIONER, v. LEHIGH AND NEW ENGLAND RAILROAD COMPANY, RESPONDENT.

Claude W. Lessig, the deceased husband of the petitioner, on May 25th, 1926, was employed in the capacity of a locomotive engineer by the Lehigh and New England Railroad Company, respondent, and was in charge of a pusher engine which had on the morning of that day been oredred from the Pen Argyl engine terminal of respondent, situate at Pen Argyl, Pennsylvania, for the purpose of assisting two east-bound trains over a portion of the railroad system of the respondent, which, so far as pertinent to the facts involved in this record, may be considered as extending from Pen Argyl, Pennsylvania, eastward to the Delaware river at Portland, Pennsylvania, and Columbia, New Jersey, from which points it extends to Hainesburg Junction, New Jersey, thence by virtue of trackage rights over the New York, Susquehanna and Western Railroad Company to Swartswood Junction, and from the latter point over the rails of the respondent via Augusta and Sussex, New Jersey, to a point in Orange county, New York state. The trains actually pushed or assisted by the locomotive of which Lessig was the engineer were a train pulled by engine No. 304, assisted by Lessig's locomotive from Pen Argyl, Pennsylvania, to Augusta, New Jersey, and a train pulled by engine No. 306, assisted by Lessig's locomotive from Hainesburg Junction, New Jersey, to Augusta, New Jersey. Both of these trains were interstate trains, having originated in the State of Pennsylvania and moving

from that state through New Jersey to a point in New York, and, in fact, contained interstate freight.

Upon the completion of the second assist eastward, which ceased at Augusta, New Jersey, a point situate on the rails of the respondent, the deceased employe received a train or operating order from the train dispatcher of the respondent to return with his engine westward to Swartswood Junction, the eastern junction point of the tracks of the respondent with those of the New York, Susquehanna and Western Railroad Company. Upon arrival at that point he received from the latter-named company a train or operating order requiring him to move with his engine westward over the tracks of the New York, Susquehanna and Western Railroad Company to Hainesburg Junction, the western end of the trackage rights of the respondent over the tracks of the New York, Susquehanna and Western Railroad Company. The last-named point was never reached by the decedent, owing to the fact that by reason of his disobedience of the provision of the operating order requiring him to take a siding with his engine, he collided with a New York, Susquehanna and Western train and was killed, the accident occurring in the vicinity of Marksboro siding, New Jersey, which siding the decedent had been ordered to take but which he failed to do.

The order covering the movement westward from Swartswood Junction to Hainesburg Junction was the last train movement or operating order ever received by Lessig. In other words, at the time of the accident no order had been issued by the respondent or anyone else covering the decedent's movements with his locomotive subsequent to his arrival at Hainesburg Junction. The record, however, does show that the day's work for Lessig and his engine had been completed in that two assisting movements require more than a day's regular time, and overtime is encountered when two assisting movements are made, so that, in fact, lessig was returning his engine to its terminal, a point in the State of Pennsylvania, situate at Pen Argyl, even though the train dispatcher of respondent had not at the moment of the accident issued the order which would have been received by Lessig had he

reached Hainesburg Junction. That a day's work had been completed and that the engine was returning homeward is shown not only by the testimony of the witnesses of the respondent but is corroborated by a member of the engine crew who was with Lessig at the time of the injury and who testified in behalf of the widow. This witness testified they never made more than two assists eastbound in one day and that upon the completion of their day's work they invariably returned to Pen Argyl, Pennsylvania.

Petitioner has introduced evidence to show that there was sufficient trackage space in the way of sidings, &c., belonging to the respondent at Hainesburg Junction to permit the placing of the engine thereon, and presumably argues therefrom that Lessig and his engine might have completed their day's work and the engine stored at Hainesburg Junction over night or for an indefinite period, taking it entirely out of its entire day's engagement as an instrumentality of interstate commerce, for it will be noted that no intrastate work was performed by the engine on May 25th, 1926.

In the brief filed on behalf of the petitioner, considerable emphasis is laid upon the fact that no train or operating order had been issued governing the movement of Lessig and his engine upon arrival at Hainesburg Junction. This fact is not denied by the respondent but the chief train dispatcher of the latter explained in detail the method of placing these orders and that it is not good railroad practice to place an order at a junction point long in advance of the arrival of the engine or train thereat. He further testified that, had the accident not happened, Lessig's further homeward movement upon the completion of his work would have been governed by a train order placed by him (the train dispatcher) at Hainesburg Junction, requiring Lessig either to run light, that is, without pulling or assisting any train, to his terminal at Pen Argyl, Pennsylvania, or that, had another train westbound been in the vicinity of Hainesburg Junction, he might have been required to assist that train westward to Pen Argyl, the engine terminal. In either event Lessig was to have been returned to Pen Argyl terminal and would have received an

order governing that movement upon his arrival at Haines-burg Junction had the fatal accident not intervened.

The record is clear that respondent maintains no facilities at Hainesburg or elsewhere in the State of New Jersey where Lessig's engine could have been returned for care and hostler-ing upon the completion of its day's work, and that engines operating out of Pen Argyl terminal for work of the character which Lessig was performing upon the day of his death are invariably returned to Pen Argyl at the end of the day.

The law applicable to facts substantially the same as those involved before us was declared by the Supreme Court of the United States in *Chicago, Rock Island and Pacific Rail-road Co.* v. *Lizzie L. Wright et al.* (1916), 239 *U. S.* 548, where the facts briefly stated were as follows: An engine was on the way from Phillipsburg, Kansas, to Council Bluffs, Iowa. The train order governing the deceased employe's movements at the time of the accident read: "Engine 1486 will run extra, Fairburg to Albright," both of which points were within the State of Nebraska. It was intended that the engine moving light at the time should proceed to a repair point in the adjoining state and an order covering that move-ment would have been given had the deceased employe reached Albright. A contention similar to that made by the petitioner here in reference to the significance of a train order covering a movement between two points within the same state was made by the petitioner in that case and the state courts sus-taind the contention. The Supreme Court of the United States, in reversing and commenting thereon said (at page 550): "In this they [the state courts] misconceived the meaning of the train order and the effect of the decisions cited. The order was given by a division train dispatcher, and meant that between the points named therein the engine would have the status of an extra train, and not that it was going merely from one of these points to the other." The Supreme Court of the United States held that the deceased employe was at the time of his injury employed in interstate commerce within the meaning of the Federal Employers' Liability act of April 2d, 1908, notwithstanding the wording

of the train order just quoted. If the employe is engaged in interstate commerce, it has been repeatedly held that remedies extended by the Federal Employers' Liability act are exclusive and the State Workmen's Compensation laws are not applicable. *New York Central* v. *Winfield, 244 U. S.* 147; *New York and Erie Railroad Co.* v. *Winfield, 244 Id.* 170.

Much as we may deplore the condition of this widow with her husband and means of support suddenly taken away from her and that of the six small children left without the care and financial assistance of a father, we are compelled under the law as it exists to-day to find that Claude W. Lessig, at the time of his injury on May 25th, 1926, was, in fact, engaged in interstate commerce and that the workmen's compensation bureau of the State of New Jersey is without jurisdiction to make any award for the relief of the widow and her children.

In view of the record and the findings of fact necessary thereon, as above set forth, the claim must be disallowed and the petition denied.

W. E. STUBBS,
*Deputy Commissioner.*